UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

SOLARGENIX ENERGY, LLC, a North Carolina )
Limited Liability Company, )
)
      Plaintiff, )    Civil Action No. 1:10-cv-738
)
vs. )
)
ACCIONA SOLAR ENERGY LLC, a Delaware )
Limited Liability Company, )
)
      Defendant. )
_____)

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND DECLARATORY JUDGMENT

Plaintiff Solargenix Energy, LLC (hereinafter "SGX"), by its attorneys Liddle and Robinson, LLP and Carruthers & Roth, P.A., complaining of Defendant Acciona Solar Energy LLC (hereinafter "ASE"), alleges:

### NATURE OF THE ACTION

1. This is an action for a declaratory judgment and a permanent injunction to determine certain of the rights of the parties under a 2005 Shareholders Agreement (attached hereto as Exhibit A). Because Defendant ASE's actions pose an immediate threat of irreparable injury to Plaintiff SGX, SGX also seeks a temporary restraining order and preliminary injunction to preserve the status quo pending the Court's determination of the rights of the parties under the contract in issue.

2. Sanford, North Carolina-based SGX (a 45% owner) and Chicago, Illinois-based ASE (a 55% owner) are the owners of 100% of the capital stock of Acciona Solar Power, Inc.,

1

formerly known as Solargenix Energy, Inc. (hereinafter "ASP"), a joint venture company formed by the parties for the ownership and development of solar thermal and other renewable power generation facilities. Their November 30, 2005 Shareholders Agreement includes two buy-out provisions. The first is a Call Option, whereby ASE, as Investor, can purchase Founder SGX's 45% interest in ASP for 120% of the appraised value of that stock. The second is a deadlock provision, which provides that in the event there is a reasonable belief of a deadlock at the ASP Board of Directors level regarding an issue material to the company, either ASE or SGX may make an offer to purchase all the other shareholder's shares at a price determined by the offeror (hereinafter the "Buy/Sell Provision"). The shareholder receiving the notice of an exercise of this then has 30 days to elect to sell its shares, or to elect to purchase the offering shareholder's shares, at the price included in the notice.

3. On September 9, 2010, ASE sent SGX a letter captioned "Purchase Notice/ASP Shareholders Agreement" (hereinafter, the "Purchase Notice," a copy of which is attached hereto as Exhibit B), which attempts to exercise the Buy/Sell Provision to require SGX to either elect to sell SGX's 45% ownership interest in ASP for $11,500,000, which is a fraction of ASP's actual value, or to elect to buy ASE's 55% ownership interest for $14,055,556, with a 30 day closing.

4. In light of the price designated by ASE, SGX ordinarily would elect to buy out ASE. SGX is prevented from doing so, however, because ASE included in its Purchase Notice, as purported conditions of purchase or sale, requirements (1) that "[b]oth parties will waive any and all claims against the other arising prior to the date of the sale" and (2) that the Cooperation Agreement and Letter of Adhesion between SGX, ASE and others, including ASE's Madrid, Spain parent, Acciona Energía SA, would be terminated.

2

5.      The conditions ASE seeks to impose on SGX are unlawful and not permitted by the Shareholders Agreement. While the Shareholders Agreement allows the offeror to include "terms and conditions of sale" in its Purchase Notice, it does not authorize the inclusion of a waiver or release of claims, or the cancellation of existing contract rights, as a term of sale. In fact, the Shareholders Agreement specifically provides for the preservation of all remedies of the parties, stating that "[e]ach of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically to recover damages by reason of any breach of any provision of this Agreement . . . ." The Purchase Notice also is defective and untimely because there is no qualifying Board of Directors deadlock, and also because ASE has forfeited its right to exercise the Buy/Sell Provision by breaching the Shareholders Agreement.

6.      Rather than respecting the preservation of SGX's claims and contact rights, ASE's Purchase Notice attempts to force SGX to release and terminate them. The waiver and termination conditions ASE attaches to its Purchase Notice would require SGX, whether it sold its 45% interest in ASP to ASE, or purchased ASE's 55% interest, to waive, and release active claims against ASE, Acciona Energia, and their affiliates seeking hundreds of millions of dollars in damages in relation to the ASP joint venture, for breach of the Shareholders Agreement, the Cooperation Agreement, and related tort claims. These claims are listed in detail in SGX's pre-suit Notice and Mediation Demand served on ASE under the terms of the Shareholders and Cooperation Agreements on September 14, 2010 (attached hereto as Exhibit C), and in repeated communications to ASE prior to its Purchase Notice.

7.      SGX will suffer irreparable injury if ASE's attempt to impose such unlawful terms on the Buy/Sell Provision is not immediately enjoined pending the Court's determination of SGX's rights under the Shareholders Agreement, including the lawfulness of requiring a

3

release of claims and a cancellation of contract rights as a term of sale. If the Buy/Sell Provision is deemed to have been properly and lawfully invoked by ASE, which SGX denies, then SGX would be placed in the position of having to elect to either sell all of its shares to ASE or buy all of the shares of ASE by the end of business on October 8, 2010 – 30 days from receipt of the Purchase Notice. Whether SGX elects to buy or sell, it risks irreparable injury if the full release term and the contract termination term attach as conditions of sale. Alternatively, SGX risks irreparable injury by refusing to elect to buy or sell in 30 days on the terms imposed, thus risking a claim that it has waived its rights under the Buy-Sell Provision. Both of these dire consequences can be avoided by preserving the status quo pending the orderly determination of the parties' rights under the Shareholders Agreement.

8. For these reasons, SGX respectfully seeks the entry of a Temporary Restraining Order and, thereafter, a Preliminary Injunction, enjoining ASE from the exercise of the Buy/Sell Provision until the Court has determined whether ASE may lawfully include a full release of claims and the cancellation of the parties' other contracts as conditions of the Buy/Sell Provision and, thereafter, a declaratory judgment that such conditions would violate the terms and conditions of the Shareholders Agreement, and is otherwise unlawful.

## PARTIES

9. SGX is a North Carolina Limited Liability Company with its principal place of business at 1378 McNeill Road, Sanford, Lee County, North Carolina 27330. It owns 45% of the outstanding common stock of ASP.

10. Defendant ASE is a Delaware Limited Liability Company with its principal place of business at 333 West Wacker Drive, Chicago, Illinois 60606. It owns 55% of the outstanding common stock of ASP.

4

## JURISDICTION AND VENUE

11. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant ASE. Among other things, ASE entered into the Shareholders Agreement (as well as several other agreements defined herein) with SGX, a North Carolina company, and assumed continuing obligations with North Carolina resident SGX under those agreements; portions of ASE's performance under the Shareholder Agreement were to and did occur in North Carolina, including the delivery of the Purchase Notice that is the subject of this action to SGX in North Carolina. Additionally, the irreparable injury that ASE's exercise of the Buy/Sell Provision would cause with its release term would be in North Carolina. ASE's predecessor in interest, by and through its agents and representatives, initially solicited SGX in North Carolina and traveled to North Carolina in September 2001 and other times to meet with SGX. From 2001 through 2009, ASE, by and through its agents and representatives, made numerous trips to North Carolina for negotiations, as a result of ASE's ownership of ASP and conducted shareholders meetings, business discussions and other matters in North Carolina. With the knowledge and consent of ASE, ASP and its predecessor in interest maintained an office in North Carolina from its inception in 2005 until 2009. The directors and officers of ASP, who were appointed by ASE, travelled to and performed portions of their functions in North Carolina.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c) in that ASE is subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to SGX's claim occurred in this District,

## FACTUAL ALLEGATIONS

### Background

14. SGX was established in North Carolina in 1997 to research, develop, and market proprietary solar thermal power generation technology. After spending years developing its proprietary and patented technology, by early 2005 SGX had established an experienced business, engineering and development staff, valuable relationships with electric utilities, and a reputation as a market leader in solar thermal power generation technologies.

15. By 2005, SGX had used its experience, relationships, and proprietary technology to acquire valuable assets necessary for the construction of a thermosolar power generation plant in Boulder City, Nevada (hereinafter "Nevada Solar One"), including vital power purchase agreements with Nevada Power & Sierra Pacific, contractual rights to acquire the site for Nevada Solar One and to obtain all necessary entitlements, access to necessary power transmission interconnection facilities, and employees with experience and technical ability to construct Nevada Solar One (hereinafter collectively, the "SGX Assets").

16. In 2004 and 2005, ASE's predecessor in interest, Acciona Energía, S.A., negotiated with SGX with respect to entering into a business relationship. Acciona Energia and its affiliates (hereinafter "Acciona") comprise a multinational organization headquartered in Spain, with worldwide holdings and business interests centered on the construction and ownership of large infrastructure projects, including power generation plants. Acciona did not have expertise, proprietary technology, or relationships in the solar thermal power generation market, however, and desired to gain access to the SGX Assets so that it could enter the solar thermal power generation market.

6

17. After a period of intense negotiations, SGX and Acciona entered into a series of transactions and agreements. One result was the formation of ASP (known in 2005 as "Solargenix Energy, Inc.") to serve as the worldwide investment and development vehicle for all solar thermal power generation activities to be conducted by SGX and Acciona, and the transfer to Acciona of SGX's rights to the development and construction of Nevada Solar One.

18. In connection with these transactions, and by making certain representations and promises to SGX including those described below, Acciona induced SGX to contribute the SGX Assets to ASP and to assign to ASE a 55% equity interest in ASP, majority control of the board of directors of ASP, and transfer substantially all of SGX's interest in Nevada Solar One, a $250,000,000 solar thermal flagship project then under development in Boulder City, Nevada, to Acciona.

19. In consideration for and as part of the inducement for SGX's transfers and agreements referenced above, Acciona agreed with SGX that it would cause ASP to become the exclusive independent worldwide thermosolar electricity plant owner and developer for both SGX and Acciona, precluding Acciona from competing with ASP in the development, engineering, ownership, operating and management services of thermosolar power generation projects.

20. By inducing SGX to transfer the SGX Assets to ASP, to transfer control of ASP to ASE, and to transfer Nevada Solar One to Acciona, Acciona obtained valuable assets in the solar thermal power generation market which otherwise would have required the expenditure of years of time and a far more significant investment of funds than acquiring the assets from SGX.

7

**The 2005 Agreements**

21. Acciona's promises and commitments are evidenced in part by certain agreements between SGX and ASE, and among SGX and Acciona, including, among other agreements, (a) a Term Sheet dated August 19, 2005 ("Term Sheet"); (b) a Shareholders Agreement dated as of November 30, 2005("Shareholders Agreement"), (c) an Amended and Restated Cooperation Agreement dated as of November 30, 2005 ("Cooperation Agreement"), and (d) a Letter of Adhesion dated as of November 30, 2005 ("Letter of Adhesion"). These agreements and the other agreements entered into by SGX and Acciona in 2005 are hereinafter collectively referred to as the "2005 Agreements."

22. The Term Sheet memorializes the SGX negotiations with Acciona that led to the transactions referenced above. A true and accurate copy of the Term Sheet is attached hereto as Exhibit D and incorporated herein by reference.

23. The Shareholders Agreement documents the agreement of SGX and ASE, as shareholders of ASP, as to ASP's operations. Among other things, the Shareholders Agreement (a) requires that ASE appoint a chief executive officer of ASP, (b) establishes that ASE will appoint three (3) members of the ASP board of directors, (c) contains certain supermajority voting requirements for specified corporate actions, (d) provides for restrictions on the transfer of ASP stock, and (e) contains the Buy/Sell Provision. A true and accurate copy of the Shareholders Agreement (excluding exhibits and schedules thereto) is attached hereto as Exhibit A and incorporated herein by reference.

24. The Cooperation Agreement documents the agreement of SGX and ASE as to their future cooperation in the field of solar thermal power generation. Among other things, the Cooperation Agreement (a) contains the promise to cause ASP to become the exclusive

independent worldwide solar thermal power plant owner, operator and developer for both SGX and Acciona, (b) requires all opportunities to invest in equity ownership of solar thermal power plants to be presented first to ASP, and (c) if ASP is unable or unwilling to undertake such investments, provides that SGX or its shareholders and ASE or its shareholders will have the right of first refusal to undertake such investments. A true and accurate copy of the Cooperation Agreement (excluding the exhibits and schedules thereto) is attached hereto as <u>Exhibit E</u> and incorporated herein by reference.

25. The Letter of Adhesion requires Acciona Energía to abide by, and to cause all of its relevant subsidiaries to abide by, certain provisions of the Cooperation Agreement. A true and accurate copy of the Letter of Adhesion is attached hereto as <u>Exhibit F</u> and incorporated herein by reference.

### Shareholders Agreement

26. Both the Shareholders Agreement and the Cooperation Agreement explicitly preserve the rights of SGX and ASE to all remedies. For example, the Shareholders Agreement provides at Section 16 that, **"Each of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically to recover damages by reason of any breach of any provision of this Agreement . . . ."**

27. The Shareholders Agreement contains a Call Option Provision in Section 10. Pursuant to the Call Option, ASE had the right to purchase SGX's shares of ASP for $40,000,000.00 for the first four years of the Agreement, through November of 2009, and thereafter for a price determined by negotiations between the parties, or in the event the parties cannot agree on a price, for one hundred and twenty percent (120%) of the appraised value of the shares.

28. In addition, the Shareholders Agreement contains the Buy/Sell Provision as "Section 13 – Purchase and Sale in the Event of a Deadlock", which provides as follows:

(a) In the event a Holder at any time reasonably believes that there is a deadlock at the Board of Directors level regarding a material issue to the Corporation, including when a material issue has been discussed at no fewer than three board meetings without resolution, such Holder (the "Initiating Shareholder") may offer at that time to purchase all but not less than all of the Common Share Equivalents of the other Holders (in such capacity, the "Recipient Shareholder") by serving written notice (the "Purchase Notice") on the Recipient Shareholder setting forth and including the following:

i. its desire to purchase all of the Common Share Equivalents of the Recipient Shareholder;

ii. the purchase price proposed to be paid for the Common Share Equivalents; and

iii. any other terms and conditions of the sale.

29. The Buy/Sell Provision was intended to allow one of the shareholders to continue the business of ASP alone in the event that ASP's Board of Directors was deadlocked with respect to a material issue to the business of ASP, and was never intended to pre-empt the Call Option.

**ASE'S Breach of the 2005 Agreements**

30. Since entering into the 2005 Agreements, ASE and the individuals appointed by Acciona to be directors and officers of ASP have breached their obligations to SGX under the 2005 Agreements, including but not limited to ASE's default on its obligation under the Shareholders Agreement to appoint a chief executive officer to provide leadership to ASP; the diversion by Acciona of opportunities to develop and own solar thermal power generation plants away from ASP; and the repudiation by ASE of its obligations under the Cooperation Agreement

10

to grant SGX and its shareholders the right of first refusal to invest in solar thermal power generation plants.

31. SGX has repeatedly objected to the actions and omissions of ASE and its affiliates, verbally and in writing, and repeatedly informed the Acciona, through its ASE Directors, that SGX intended to exercise its rights under the dispute resolution provisions of the 2005 Agreements, including litigation.

32. On September 14, 2010, SGX sent to Acciona and SGX a Notice of Breach and Demand for Non-binding Mediation (hereinafter "Notice of Breach"), as required by the 2005 Agreements, outlining numerous breaches of those agreements, and SGX's demand that the parties proceed to mediation pursuant to the dispute resolution provisions of the agreements. A true and accurate copy of the Notice of Breach is attached hereto as <u>Exhibit C</u> and is hereby incorporated by reference.

### ASE's Unlawful Purchase Notice Under Shareholders Agreement

33. On September 9, 2010, the ASE Purchase Notice was delivered to SGX at its Sanford, North Carolina office, with copies to its North Carolina counsel in Greensboro. A true and accurate copy of the Purchase Notice is attached hereto as <u>Exhibit B</u> and is hereby incorporated by reference.

34. The Purchase Notice attempts to exercise the Buy/Sell Provision at a price ($11,500,000) that is a fraction of ASP's actual value. The Purchase Notice, however, eviscerates the rights of SGX under the Buy/Sell Provision by unlawfully imposing upon SGX's purchase of ASE's shares, or SGX's sale of its own interest, a requirement that SGX waive and release all of its claims against ASE and parents, including Acciona, cancel the Cooperation

11

Agreement between SGX, ASE, and other parties, and terminate the 2005 Letter of Adhesion executed by Acciona Energía, S.A.

35. No such terms of sale are provided for in the Shareholders Agreement. The inclusion of the release and termination terms seeks to nullify the provisions of the Shareholders Agreement and the Cooperation Agreement that preserve all remedies of all parties. Section 16 of the Shareholders Agreement, for example, provides that, **"Each of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically to recover damages by reason of any breach of any provision of this agreement . . . ."**

36. ASE's sale terms thus would require SGX, whether it sold its 45% interest in ASP to ASE, or purchased ASE's 55% interest, to waive and release claims it has asserted against ASE, Acciona, and their affiliates for hundreds of millions of dollars in damages for violation of the Shareholders Agreement and the Cooperation Agreement in relation to the ASP joint venture. Those claims are set forth in detail in SGX's Notice of Breach.

37. In addition to including the unlawful waiver of claims and contract termination terms in the Purchase Notice, in violation of the Shareholders Agreement, ASE's invocation of the Buy/Sell provision of the Shareholders Agreement is untimely, as there has been no qualifying deadlock of the ASP Board of Directors that is a condition precedent to any right to exercise the Buy/Sell Provision under reasonable terms. Furthermore, ASE's material breach of the Shareholders Agreement precludes it from any exercise of the Buy/Sell Provision or the invocation of any of its rights under that agreement.

38. While the Purchase Notice states that ASE "believes a deadlock exists at [ASP's] Board of Directors," it has failed to specify any such claimed deadlock.

12

Case 1:10-cv-00738-NCT-PTS   Document 1   Filed 09/28/10   Page 12 of 18

## FIRST CLAIM FOR RELIEF
### (Temporary Restraining Order and Preliminary Injunction)

39. SGX realleges and incorporates herein by reference the allegations contained in all of the preceding paragraphs of the Complaint as though fully set forth.

40. SGX will suffer irreparable injury if ASE's attempt to impose such unlawful terms on the Buy/Sell Provision is not immediately enjoined pending the Court's determination of SGX's rights under the Shareholders Agreement, including the lawfulness of requiring a release of claims and a cancellation of contract rights as a term of sale. If the Buy/Sell Provision is deemed to have been properly and lawfully invoked by ASE, which SGX denies, then SGX would be placed in the position of having to elect to either sell all of its shares to ASE or buy all of the shares of ASE by the end of business on **October 8, 2010** – 30 days from receipt of the Purchase Notice. Whether SGX elects to buy or sell, it risks irreparable injury if the full release term and the contract termination term attach as conditions of sale. Alternatively, SGX risks irreparable injury by refusing to elect to buy or sell in 30 days on the terms imposed, thus risking a claim that it has waived its rights under the Buy-Sell Provision. Both of these dire consequences can be avoided by preserving the status quo pending the orderly determination of the parties' rights under the Shareholders Agreement.

41. ASE's Purchase Notice violates the Shareholders Agreement, as it purports to require terms and conditions of the sale of SGX's ASP stock or the purchase by SGX of ASE's ASP stock that are not permitted by that agreement, were not intended to be part of the agreement between the parties, and violate the provisions of the agreement that mandate the preservation of all remedies to all parties.

42. Further, ASE is not entitled to invoke the Buy/Sell Provision as ASE has previously materially breached, and continues to be in breach of, the 2005 Agreements, as set forth herein. In addition, ASE is not entitled to invoke the Buy/Sell Provision because it has not and cannot establish the existence of a "reasonable belief" by ASE that there is a deadlock at the Board of Directors level of ASP regarding a material issue to the Corporation.

43. SGX respectfully requests a temporary restraining order and preliminary injunction enjoining ASE from exercising the Buy/Sell Provision as set forth in the Purchase Notice until such time as the Court has determined Plaintiff's request for a declaratory judgment on the lawfulness of the mandatory release provision.

44. As set forth in the preceding paragraphs, if ASE is permitted to enforce the Buy/Sell Provision of the Shareholders Agreement with the mandatory release condition, SGX will suffer irreparable injury and not have an adequate remedy available at law as it will have risked the involuntarily waiver and release of all of its substantial damages claims against ASE, Acciona, and their affiliates.

45. The balance of hardships between the parties weighs heavily in favor of SGX as it is in jeopardy of being deprived of the right to pursue substantial claims for damages, and of having its rights under the 2005 Agreements and the Letter of Adhesion cancelled.

46. The public interest would not be disserved by the issuance of a permanent injunction by this Court. To the contrary, the public interest is better served by the issuance of an injunction that protects SGX's rights pending judicial resolution of the declaratory judgment claim of this complaint.

47. Based upon the foregoing allegations, SGX has established a likelihood of success on the merits on its claim that the mandatory release and cancellation terms of the

Purchase Notice are unlawful, not permitted by the Shareholders Agreement, and violate the terms of that agreement, entitling it to declaratory judgment relief.

48. Accordingly, Plaintiff SGX requests that the Court issue a temporary restraining order and a preliminary injunction, that will preserve the status quo of the parties ownership interests in ASP, and preserve SGX's substantial rights, during the pendency of this litigation and until SGX's claim for declaratory judgment can be heard and determined. If the Court issues a temporary restraining order or a preliminary injunction, ASE will not suffer any harm or prejudice because ASP can continue to operate and regularly conduct business.

49. In order to preserve the status quo and protect SGX's rights until its claims for declaratory judgment can be heard and adjudicated, SGX respectfully requests entry of a temporary restraining order and preliminary injunction enjoining Defendant ASE from further exercising or invoking the Buy/Sell Provision of the Shareholders Agreement under a Purchase Notice or condition of sale that mandates or imposes a release of SGX's claims against ASE or any of its parents or affiliates, or the cancellation of any of SGX's rights under any of the 2005 Agreements, including the Cooperation Agreement, and the Letter of Adhesion

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

50. SGX realleges and incorporates herein by reference the allegations contained in all of the preceding paragraphs as though fully set forth.

51. SGX respectfully requests a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, that declares (1) that ASE's Purchase Notice violates the Shareholders Agreement, including the provisions of Section 13 (Purchase and Sale in the Event of a Deadlock) and Section 16

(Remedies), which mandate the preservation of all remedies to all parties, by requiring a release of SGX's claims against ASE or any of its parents or affiliates, or the cancellation of any of SGX's rights under any of the 2005 Agreements, including the Cooperation Agreement, and the Letter of Adhesion, as a term of sale under the Buy/Sell Provision; (2) that there is no deadlock of the ASP Board of Directors on any issue material to the company; and (3) that ASE cannot enforce or exercise the Buy/Sell Provision of the Shareholders Agreement until such time as it has been determined by a court of competent jurisdiction that ASE has not otherwise violated the terms of the Shareholders Agreement and thus forfeited its rights pursuant to the Shareholders Agreement.

### THIRD CLAIM FOR RELIEF
(Permanent Injunction)

52. SGX realleges and incorporates herein by reference the allegations contained in all of the preceding paragraphs as though fully set forth

53. Based on the allegations set forth herein, SGX respectfully requests a permanent injunction prohibiting Defendant ASE from exercising and/or invoking the Buy/Sell Provision as set forth in ASE's unlawful Purchase Notice which includes an unlawful release and waiver of claims and termination of the Cooperation Agreement and Letter of Adhesion and SGX's substantial rights thereunder.

### REQUEST FOR RELIEF

WHEREFORE, SGX respectfully requests that this Court grant it the relief requested herein, that all costs of this action be taxed against Defendant ASE, that it be awarded attorney's fees as allowed by law; and for such other and further relief as the Court deems just and proper.

This the 28th day of September, 2010.

Respectfully submitted,

By: /s/ James R. Hubbard
James R. Hubbard
N.C. State Bar No. 13196
LIDDLE & ROBINSON, LLP
800 Third Avenue
New York, NY 10022
Tel. (212) 687-8500
Fax (212) 687-1500
jhubbard@liddlerobinson.com

/s/ Michael J. Allen
Michael J. Allen
N.C. State Bar No. 18030
mja@crlaw.com

/s/ Craig A. Taylor
Craig A. Taylor
N.C. State Bar No. 28117
cat@crlaw.com

/s/ Robert N. Young
Robert N. Young
N.C. State Bar No. 35679
rny@crlaw.com
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540 (27402)
Greensboro, NC 27401
Tel. (336) 379-8651
Fax. (336) 478-1175

Attorneys for Plaintiff

STATE OF NORTH CAROLINA

VERIFICATION

COUNTY OF GUILFORD

JEFF MYLES being first duly sworn, deposes and says that he is the Secretary and Vice President of Solargenix Energy, L.L.C., the plaintiff in this action, and is authorized to execute this Verification on its behalf; that he has read the foregoing Verified Complaint, and that such allegations are true of his knowledge, except as to those matters stated on information and belief, and as to those matters he believes them to be true.

_____
JEFF MYLES

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

I certify that the following person personally appeared before me this day, acknowledging to me that he signed the foregoing document: Verified Complaint

Date: 9/27/10

Lisa D. Metcalf

Lisa D. Metcalf, Notary Public

[Official Seal]

My Commission Expires: 4-9-2015

```
*******************************
*        NOTARY PUBLIC         *
*       LISA D. METCALF        *
*      GUILFORD COUNTY, NC     *
*   My Commission Expires 4-9-2015 *
*******************************
```

18